1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11  EARL SIMPSON,

12          Plaintiff,

13      v.

14  YVONE BREWSTER,

15          Defendant.

16

CASE NO. 1:14-cv-01536-MJS (PC)

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

**(ECF No. 1)**

**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS**

17      Plaintiff is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil

18  rights action brought pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff has consented

19  to Magistrate Judge jurisdiction. (ECF No. 4.) No other parties have appeared in the

20  action. Plaintiff's complaint is before the court for screening.

21  **I.      SCREENING REQUIREMENT**

22

23      The *in forma pauperis* statute provides, "Notwithstanding any filing fee, or any

24  portion thereof, that may have been paid, the court shall dismiss the case at any time if

25  the court determines that . . . the action or appeal . . . fails to state a claim upon which

26  relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

27

28

1

## II.    PLEADING STANDARD

2

3

Section 1983 "provides a cause of action for the deprivation of any rights,

4

privileges, or immunities secured by the Constitution and laws of the United States."

5

Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

6

Section 1983 is not itself a source of substantive rights, but merely provides a method for

7

vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

8

(1989).

9

To state a claim under § 1983, a plaintiff must allege two essential elements:

10

(1) that a right secured by the Constitution or laws of the United States was violated and

11

(2) that the alleged violation was committed by a person acting under the color of state

12

law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d

13

1243, 1245 (9th Cir. 1987).

14

A complaint must contain "a short and plain statement of the claim showing that

15

the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

16

are not required, but "[t]hreadbare recitals of the elements of a cause of action,

17

supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

18

662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

19

Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

20

that is plausible on its face." Id. Facial plausibility demands more than the mere

21

possibility that a defendant committed misconduct and, while factual allegations are

22

accepted as true, legal conclusions are not. Id. at 677-78.

23

24

## III.    PLAINTIFF'S ALLEGATIONS

25

Plaintiff is civilly committed as a Mentally Disordered Offender (MDO) at Coalinga

26

State Hospital (CSH).  Defendant Brewster is a trust account agent at CSH.  Plaintiff's

27

28

allegations are very difficult to decipher.  However, he seems to be protesting CSH's practice of attaching his social security benefits, stating that he "is filing a claim against the state agent of the prison for concealing annual fundings [sic]… in the amount of $117,336,746 dollars that was taking [sic] from the petitioner's social securety [sic] account…." (ECF No. 1, at 4.)  He also alleges, more generally, that "the state charges the patients who are civilly committed daily in the amount about $467.00 a day through $573.67 daily… without consent from the patient,"[1] and that the Department of State Hospitals and CSH, specifically, have acted as "debt collectors" by "continuously charging the patient for the cost of care… without consent." (ECF No. 1, at 6.)  He alleges this conduct is tortious and constitutes an invasion of a patient's right to his own money, trespass, and libel insofar as it "states to the patient that they [sic] are incompetent to conservator [sic] their own account activities."  Plaintiff requests restitution of the funds unlawfully attached.

## IV.   ANALYSIS

Construed liberally, plaintiff appears to be claiming that Defendant violated procedural due process and the Social Security Act by taking and using Plaintiff's money, including his Social Security benefits, to pay for his care at CSH. Plaintiff apparently also wants to allege several state tort law violations.  Plaintiff has not provided sufficient information to support a federal claim, and the Court declines to consider his state claims because he has not alleged compliance with the California Tort Claims Act.  The Court will therefore dismiss the complaint, giving Plaintiff leave to amend to correct deficiencies.  The Court explains its reasoning and describes the relevant legal standards below.

---

[1] Plaintiff does not explain where he derived these figures, nor does he include financial or other supporting documentation with his complaint.

**A.  Plaintiff's Status**

Plaintiff is being held at CSH pursuant to California's Mentally Disordered Offender (MDO) statute. CAL. PENAL CODE §§ 2960 et seq.  Pursuant to this statute, an individual convicted of certain enumerated crimes and meeting other criteria may be civilly committed for "involuntary treatment of a severe mental disorder" at a state psychiatric hospital as a condition of parole.  People v. McKee, 223 P.3d 566, 576-577 (Cal. 2010); CAL. PENAL CODE §§ 2962; 2966.

Although the state retains custody of MDOs in part because of the criminal behavior that led to their incarceration, the object of their involuntary commitment is "not punitive or penal in nature." In re Qawi, 81 P.3d 224, 227 (Cal. 2004); see also Kansas v. Hendricks, 521 U.S. 346, 368-369 (1997)(holding that civil commitment pursuant to Kansan sexually violent predator statute was not punitive in nature); People v. McKee, 223 P.3d 566, 576-577 (Cal. 2010)(same for California's Sexually Violent Predator Act). Instead, the purpose of committing the offender is to "provide [him] with treatment while at the same time protecting the general public from the danger to society posed by an offender with a mental disorder." Qawi, 81 P.3d at 227.

In keeping with civil commitment's non-punitive purpose, "persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Jones v. Blanas , 393 F.3d 918, 931 (9th Cir. 2004)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)).   Therefore, jurisprudence outlining treatment of prisoners provides a constitutional floor for treatment of civil detainees, and civil detainees must, "at a minimum, be afforded the rights afforded prisoners confined in a penal institution." Hubbs v. Cty. of San Bernardino, 538 F.Supp.2d 1254, 1266 (C.D. Cal. 2008)(citing

4

Hydrick v. Hunter, 500 F.3d 978, 998 (9th Cir. 2007), *vacated by* 556 U.S. 1256 (2009));

see also Jones, 393 F.3d at 928-929 (applying the prison mailbox rule to civil detainees

and discussing generally the constitutional standards applicable to them).

### B. California Welfare and Institutions Code § 7281

CAL. WELF. & INST. CODE § 7281 provides that funds belonging to a patient

committed to an institution under the jurisdiction of the Department of State Hospitals

"shall be deposited in the name of that patient in the patients' [sic] personal deposit

fund." Whenever the sum in any patient's personal deposit fund exceeds $500, "the

excess may be applied to the payment of the care, support, maintenance, and medical

attention of the patient." CAL. WELF. & INST. CODE § 7281.  The general constitutionality of

§ 7281 is not in dispute. See Crawford v. Gould, 56 F.3d 1162, 1165-1166 (9th Cir.

1995); Williams v. Phillips, No. 1:11-CV-00456 2012 WL 1076251, at *10 (E.D. Cal. Mar.

29, 2012); see also Fayle v. Stapley, 607 F.2d 858, 863 (9th Cir. 1979)(concluding, with

reference to an analogous Arizona statute, that "it is not unreasonable to require the

patient to contribute to his care to the extent of his reasonable ability").

Here, Plaintiff is committed to CSH, which is under the jurisdiction of the

Department of State Hospitals.  Therefore he is subject to CAL. WELF. & INST. CODE §

7281.  To the extent Plaintiff argues in his complaint that charging him for the cost of

care is, on its face, unlawful, he is mistaken.  To the extent he argues more narrowly that

particular withdrawals violated his procedural due process rights, or that use of his Social

Security benefits violated the anti-attachment provision of the Social Security Act, the

court examines these potential claims in the sections that follow.

1

2

3

## C. Procedural Due Process

Plaintiff fails to state a procedural objection to withdrawal of funds other than

Social Security benefits from his trust account without his consent.

The Due Process Clause of the Fourteenth Amendment guarantees "procedural

fairness" and protects prisoners and civil detainees alike from being deprived of property

without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also

Crawford, 56 F.3d at 1165 (9th Cir. 1995)(citing with approval district court's finding that

withdrawals from involuntarily committed patients' trust accounts violated due process).

Where a plaintiff is deprived of a protected property interest by operation of "established

state procedure, rather than random and unauthorized action," then he or she is

generally entitled to predeprivation process. Hudson v. Palmer, 468 U.S. 517, 532

(1984)(citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-436 (1982)); Newman

v. Sathyavaglswaran, 287 F.3d 786, 799 (9th Cir. 2002).

Here, an involuntarily committed mental patient has "substantial property

interests" in his deposit fund and the benefits deposited therein, Fayle, 607 F.2d at 861

n. 2, and Defendants deprived Plaintiff of this property pursuant to § 7821, an

"established state procedure."  Therefore, Plaintiff was entitled to some predeprivation

process before his money was withdrawn. Id.; see also Crawford, 56 F.3d at 1165;

Brinkman v. Rahm, 878 F.2d 263, 265 (9th Cir. 1989).

Indeed, in Crawford, the Ninth Circuit outlined the constitutionally adequate

process due a patient prior to a withdrawal under §7821: the state must 1) inform the

patient of his or her proposed share of the cost of care and the facts on which the

determination was made; and 2) of his or her right to appeal the share of cost

determination; 3) provide a description of the appeal process and procedure; and 4)

6

inform the patient that certain federal benefits, including Social Security benefits, are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's consent.  56 F.3d at 1165 (quoting the district court's remedy for the constitutionally deficient notice California provided).  However, the patient's consent is *not* required to withdraw funds other than Social Security benefits. See id., at 1166-1167; see also Fayle, 607 F.2d at 861 (finding that Fayle was entitled to notice and a hearing prior to entry of a court order authorizing withdrawals from his account, but not that his consent was required).

Here, Plaintiff has neither described the process he received prior to the withdrawals from his trust account, nor indicated that such process failed to meet the requirements in Crawford.  Instead, he claims only that his lack of consent makes the withdrawals unconstitutional.   For the reasons explained above, he fails to state a due process claim on this basis.  The Court nevertheless will give him leave to amend to plead true facts indicating that the notice he received of withdrawals was constitutionally inadequate.

**D.  42 U.S.C. §  407(a)**

Plaintiff's consent *may*, however, have been necessary to withdraw his Social Security benefits.  Section § 407(a) of the Social Security Act limits the availability of the benefits to be used to satisfy debts, providing that:

> "The right of any person to any future [old-age,
> survivors, and disability insurance benefits] will not be
> transferable or assignable, at law or in equity, and none of
> the moneys paid or payable or rights existing under this
> subchapter shall be subject to execution, levy, attachment,

7

garnishment, or other legal process or to the operation of any

bankruptcy or insolvency law."

42 U.S.C. § 407(a).

Section 407(a) preempts state statutes authorizing use of institutionalized

patients' benefits to pay for their care, at least where the state is not managing the

benefits on behalf of the patient.  Bennett v. Arkansas, 485 U.S. 395, 397

(1988)(Arkansas statute allowing attachment of Social Security benefits for prisoner's

care violated the Supremacy Clause); Crawford, 56 F.3d at 1165 (applying Bennett to

California statute); Brinkman, 878 F.2d at 263(applying Bennett to Washington statute).

The state's use of the money is considered to be a form of "attachment," and therefore a

violation of § 407(a). Wash. St. Dept. of Soc.  Serv. v. Guardianship Estate of Keffeler;

537 U.S. 371, 388 (2003); Bennett, 485 U.S. at 397-398. Thus, in Crawford, the Ninth

Circuit concluded that "[a]bsent consent, a state has no valid means of obtaining an

institutionalized person's Social Security benefits." 56 F.3d at 1167.  California could only

attach the benefits after notifying patients that the money was otherwise "exempt from

legal process," and the patients provided "knowing, affirmative, and unequivocal

consent." Id.

Crawford, like Bennett and Brinkman before it, dealt with a situation in which the

state did not manage plaintiffs' benefits for them, but instead took the money directly

from their accounts.  See Crawford, 56 F.3d at 1164 (explaining process by which

California withdraws money from patients' trust accounts); see also Washington State

Dept. of Soc.  Serv. v. Guardianship Estate of Keffeler; 537 U.S. 371, 388-389

(2003)(distinguishing Bennett); Mason v. Sybinski, 280 F.3d 788, 792-793 (7th Cir.

2002)(same).   However, where a Social Security beneficiary is "legally incompetent or

8

mentally incapable of managing benefit payments," SSA regulations allow the public institution having custody of the beneficiary to be appointed "representative payee" of the benefits. 20 C.F.R. § 404.2001, § 404.2010(a)(1), § 404.2021(a)(3).  In other words, the SSA can formally designate a state hospital to receive benefits on behalf of a person committed to its custody. 20 C.F.R. § 404.2001; § 404.2021(a)(3); Sybinski, 280 F.3d at 793 (Indiana psychiatric hospital lawfully appointed representative payee of mental patients' benefits).

Where an institution has been properly appointed a representative payee, § 407(a) does not prohibit the institution from applying a recipient's benefits to the cost of his or her care, irrespective of consent. See Keffeler, 537 U.S. at 386-389 (section 407(a) did not bar representative payee social services agency from using foster children's social security benefits to reimburse foster parents for costs of caring for the children); Sybinski, 280 F.3d at 792-793 (analogous result for state hospital serving as representative payee of mental patients' benefits); see also Gossett v. Czech, 581 F.3d 891, 894-895 (9th Cir. 2009)(extending rationale of Keffeler to use of veterans' benefits). The formalized relationship between the public entity and the beneficiary means that use of the beneficiary's funds does not amount to "attachment" or "other legal process" within the meaning of 407(a), but instead to "reimbursement" of "funds already in the department's possession and control, held on terms that allow the reimbursement." Keffeler, 537 U.S. at 386; accord Gossett, 581 F.3d at 894.

Based on the foregoing, if Plaintiff's benefits were taken directly from his account without notification or consent, he could potentially have a valid claim under Crawford. However, if CSH acts as his representative payee, use of the benefits to pay for his care would appear to pass constitutional muster under Keffeler even absent Plaintiff's

consent.  Here, Plaintiff has not provided enough information for the Court to determine

in which situation Plaintiff finds himself.  Plaintiff alleges only that Defendant has used

his social security benefits to pay for his care at CSH.  He does not state whether he: 1)

refused consent to this use of his benefits; 2) was notified of his right to refuse consent

to this use; or 3) receives his benefits directly or through a representative payee. Without

this information, he fails to state a claim for a violation of § 407(a).  The Court therefore

dismisses his claim, but gives leave to amend to correct the noted deficiencies.  In

addition, Plaintiff is to provide more precise information about the amount of money he

receives in Social Security benefits and the portion of such benefits being withdrawn.

The suggestion that this *in forma pauperis* Plaintiff receives $117,336,746.00 in benefits

each year may in and of itself preclude a finding that the claim is  plausible  under

Ashcroft v. Iqbal, 556 U.S. at 678.

### E.  State Tort Claims

The California Tort Claims Act requires plaintiffs to present tort claims against

public entities to the California Victim Compensation and Government Claims Board no

more than six months after the cause of action accrues.  CAL. GOVT. CODE § 905.2, 910,

911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of

the claim, are prerequisites to filing suit.  Castaneda v. CDCR, 212 Cal. App. 4th 1051,

1061 (Cal. Ct. App. 2013); Easter v. CDC, 694 F.Supp.2d 1177, 1185-1186 (S.D. Cal.

2010). Here, Plaintiff has not alleged compliance with the Act, so the Court declines to

address the validity of his state tort claims.

The Court will not exercise supplemental jurisdiction over a state law claim absent

a cognizable federal claim. 28 U.S.C. § 1367(c)(3); Herman Family Revocable Trust v.

Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); Brown v. Lucky Stores, Inc., 246 F.3d

1182, 1189 (9th Cir. 2001).  "When . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing v. National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989). If Plaintiff elects to submit an amended complaint alleging compliance with the Tort Claims Act, the Court will reexamine whether to exercise supplemental jurisdiction over Plaintiff's state law claims.

## E.  RELIEF

Plaintiff requests both an injunction and restitution of the monies already taken from his deposit account.  It is not clear whether such relief is available to him.  While a plaintiff who establishes that his Social Security benefits have been attached unlawfully by a state agency may be entitled to an injunction preventing further attachments, Crawford, 56 F.3d 1163-1164, Eleventh Amendment immunity may bar restitution of benefits already attached. See Brinkman, 878 F.2d at 265 n. 1; see also Diaz v. Carlson, 5 F.Supp.2d 809, 814 (C.D. Cal. 1997).

## V.   CONCLUSION AND ORDER

Plaintiff fails to state any cognizable claim against Defendant Brewster.

The Court grants Plaintiff the opportunity to correct the deficiencies analyzed above in an amended complaint.  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(no "buckshot" complaint). An amended complaint supersedes the prior complaint. Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012), and must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.   Plaintiff's signed first amended complaint (ECF No. 1) is DISMISSED for failure to state a claim upon which relief may be granted,

2.   The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his complaint filed October 1, 2014,

3.   Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

4.   If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:   March 6, 2015                          /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE